First case of the day is number 4-14-0336, People v. John Whittle. Appearing for appellant is attorney Derrick Kimmel. And for the appellee is attorney Julia Wyckoff. Good morning. Mr. Kimmel, are you ready to proceed? Yes, sir. You may. May it please the court, counsel. My name is Derrick Kimmel, and on behalf of the Office of the State of Health Defendant, I represent Mr. John Whittle. The main focus of the trial in this case was supposed to be on whether Mr. Whittle had constructive possession of two handguns found in another person's purse. But it turned into something very different. In the course of trying to prove that Mr. Whittle possessed these handguns, the prosecution brought in a heap of prejudicial evidence of alleged other crimes, allowing in so much evidence was error, and the divergent outcomes of the two gun charges here show that these errors were not harmless, where none of the other crimes' evidence went to the charge of which Mr. Whittle was acquitted, and all of that evidence went to the charge of which he was convicted. First, the prosecution introduced so much evidence of other bad acts that Mr. Whittle could not have received a fair trial here. How does that work with what you just said? If the jury acquitted him of some charges, how they were just prejudiced with all this other improper evidence only with regard to some but not others? It is a bit of a conundrum, Your Honor. Well, the theory generally is the state slid them up improperly, therefore he couldn't get a fair trial. Doesn't the very fact of mixed verdicts suggest otherwise? I don't think so, Your Honor, particularly in the harmless error analysis. It shows that the jury was conflicted and did not believe the testimony of Gabrielle Simonot, who testified. Well, the state really slid them up. The jury would have said, well, you know, everything is so great, but he's a bad guy. Isn't that the argument? It is the argument. And a verdict like this gives me some continued belief in the strength of juries to evaluate the evidence, at least on account where there was no evidence showing that Mr. Whittle possessed the .357 revolver. But it is an interesting point, Your Honor, and those two things are somewhat in conflict. The fact that the jury acquitted Mr. Whittle of one of the charges shows that they weren't so overpowered that they convicted him of everything. But that, I believe, goes to the harmless error analysis more than it shows that Mr. Whittle received a fair trial. Our Supreme Court has talked at length about how this type of error strikes at the very integrity of our system of justice because we don't just care about the outcomes of cases. We care about the process, the results of those outcomes. And this process is untenable. In particular, testimony of William Rivera included a number of outrageous details that should never have gone before a jury because those details went well beyond any legitimate purpose that was relevant here. Such details included that Mr. Whittle was a high-level heroin dealer. He wasn't just a heroin dealer. He was, quote, the source for heroin in Decatur. Mr. Rivera detailed how, in the course of his dealings with different heroin dealers, he moved up the food chain to Mr. Whittle from lower-level dealers to get a better price for heroin. That is an outrageous detail. He also testified that Mr. Whittle sold him heroin at least 100 times. These details have nothing to do with the legitimate purpose for which the prosecution was moving to introduce this evidence, which was to show Mr. Whittle's alleged knowledge or possession of a handgun. Mr. Kimmel, if I could interrupt you just for a moment. Prior to Mr. Rivera's testimony, was there a proffer made in regards to his testimony? There was, Your Honor. How detailed was it in terms of some of these things that you just mentioned about, for instance, him being a high-level heroin dealer? I think the testimony and the proffer outside of the presence of the jury and then the testimony in front of the jury, I think they were substantially similar. Mr. Rivera did expand somewhat on some of those details, but I think largely the testimony was quite similar. Were there objections made to some of these details that you're talking about beyond the global objection that the other crimes evidence should not be admitted, that Mr. Rivera's testimony in general should not be admitted? There was not, Your Honor, although I think that such an objection would not have been proper given the broad scope of the Court's ruling on what was to be allowed. I think there could be somewhat of a fine line there. Why is that? Because the Court said this was challenged three different times, you know, before and during trial and then the post-trial motion. The initial motion in limine, the Court just heard what the attorneys said the testimony was going to be. Once the Court heard Rivera's testimony in the offer of proof, it said you can testify to all of this. The ruling on what would be allowed had no limitations whatsoever, so there was no scope limitation for counsel to invoke in objecting it. So my argument is that that broad ruling, there was no room for counsel to object and say, this is beyond the scope of what Your Honor allowed because what was allowed was so broad. So I think it's properly before the Court on appeal here. I don't think there was much else that defense counsel could do in this situation. He had so thoroughly challenged this evidence at every stage leading up to that testimony, especially where these details, even if they elaborated somewhat on what was stated in the proffer, I think they were substantially similar to what was stated outside of the presence of the jury. In addition, Mr. Whittle, according to Mr. Rivera, Mr. Whittle went by the street name of Gotti, a la mobster John Gotti, and that was repeated over and over by Mr. Rivera. That's really the only way that he referred to Mr. Whittle on the witness stand. Now, this evidence all painted Mr. Whittle as a sophisticated criminal mastermind, a drug-dealing kingpin who was the source for heroin in Decatur. These details were inappropriate because they went beyond any legitimate purpose, knowledge, or possession of the gun. They should not have gone before the jury. Also, a police officer, Detective Causer, testified expressly to corroborate some parts of the story of Mr. Rivera. Our Supreme Court has clearly stated that evidence of other crimes cannot be admitted to enhance the credibility of a witness. This testimony was wholly improper. It should never have come in at all. That's People v. Kleiner from 1998. And this is important because the police officer testified only that Mr. Whittle admitted to him that he was a heroin dealer. That's the only commonality between these two pieces of testimony. So the thing that Causer is corroborating from Rivera's testimony is itself a wildly prejudicial detail that does not go to possession of the gun. It's a component of Rivera's story, but it's another step removed from that legitimate purpose. And so Causer can't testify just to enhance Rivera's credibility on this one detail that is removed from the actual legitimate purpose. Well, if Rivera properly is permitted to testify that the defendant was a heroin dealer, and that was his connection with him, that's how he got his heroin, and that's why he was connected with him on getting the gun, why is it improper for Causer to testify that the defendant admitted he was a heroin dealer? Because it becomes a mini-trial. Isn't that a judgment called by trial court, whether it becomes a mini-trial, whether it gets the jury's eye off the ball? It is also a judgment called by this court on appellate review. On an abusive discretion standard? On an abusive discretion standard, there's no wiggle room. Why isn't it relevant to demonstrate the connection between these two? Without Causer's testimony, there's just Rivera's word for all of this. But that is precisely what the Supreme Court was talking about, and that this evidence cannot be admitted to enhance the credibility of the witness. I mean, Your Honor's point is that Causer can testify to corroborate this piece of Rivera's story, but that's just enhancing his credibility. That's explicitly not allowed under Kleiner. That's not what the court said. That's not what the Supreme Court decision holds, Counsel. It's unique to the facts of that case. It was, Your Honor, and I'm applying it to this situation. Kleiner was one witness being rehabilitated. From the point of view of the jury and the judge instructing the jury in launching this case, why isn't this probative evidence to demonstrate the connection between Rivera and the defendant? Your Honor, I think it is, but in this sense it goes too far. It strays too far from the original legitimate purpose, and I think that— How long did Causer testify? Wasn't it brief just to this point? I'm sorry, Your Honor? Wasn't Causer's testimony brief and just to this point? It was to this point, and the other fact that he brought in, which is also problematic, is that Mr. Whittle did not use heroin himself for the purpose of maximizing his profits. It's another fact that goes to this narrative of the prosecution of Mr. Whittle as being a sophisticated drug dealer. He's not some amateur dealer. He's a businessman. He's maximizing his profits. So it was those two facts. It's true that Causer did not testify on and on. How did that then become a mini-trial on this point? It piles on to a point that is already prejudicial to Mr. Whittle, and that purpose of just enhancing Rivera's credibility should not have been allowed here. It's also arbitrary when compared with the court's treatment of Elia Lobano, who also would have testified that Mr. Whittle was a heroin dealer, and the court decided that that was going too far. But Causer's testimony could be allowed in. There's no distinction between— But the very point you just made, doesn't this demonstrate the court's careful balancing of the evidence offered so as to strike an appropriate balance between probative and prejudicial evidence? I don't see how that could be true, Your Honor. The court didn't let it all in, did it? That is true, Your Honor. But the point I just made, that there's no distinction between the two, I don't see how that is careful balancing. If you pick one that is essentially the same as the other and say that one is going too far and the other one is perfectly acceptable, I don't see how that is careful balancing when there's no rational basis for distinguishing between the two. And that is the essence of the abuse of discretion standard of review. It's an arbitrary decision to choose between these two pieces of testimony. That's not careful balancing when there's no distinguishing factor between them. Both of these pieces of testimony would have simply stated that Mr. Whittle is a heroin dealer, and the court, in distinguishing between them, didn't say, I think we can only allow in one to testify because this is prejudicial. It said, well, I think that's getting a little too far. Lobano would have actually testified to a relationship between Rivera and Mr. Whittle. So in some ways, her testimony on your honor's theory would have more relevance here than Detective Causer's. So the court erred by keeping it up? No, I think both of these pieces of evidence should have been kept out, and I made that clear in the reply brief. The state took that approach, but that was not the argument we were making. I think both should have been kept out. But Detective Causer's testimony here is quite prejudicial. He's a police officer, versus Rivera's testimony. Rivera admits that he has lied repeatedly about this exact testimony that he gives. Toby Pfister, who is the original owner of the gun, calls Rivera a liar who cannot be trusted on the witness stand. And Rivera's lies include not just denying involvement in the burglary that he now testifies to. In the interim period, he then frames an entirely innocent man for this crime. He admits that he named a totally innocent man and said that he was guilty of this crime, and then retracts that once he got immunity for this crime, so then named Mr. Whittle. So he has serious credibility problems. That matters because putting Detective Causer up on the witness stand, his testimony is not just cumulative on this issue. He's affording his credibility to Mr. Rivera, and Rivera's testimony very well could have turned this case. The jury even requested a transcript of his testimony during deliberations. So this had a serious impact on this case, putting Detective Causer up there to say that, yeah, this one piece of Rivera's story at least is true. Mr. Whittle is a heroine. He admitted that to me. This is a weighty issue of prejudice in this case. Even if this court rejects all the other arguments, just Detective Causer's testimony here should warrant a reversal and a new trial because it could well have changed the outcome. This was not an overwhelming case. What about the incident immediately preceding the traffic stop involving the two motorists that witnessed the blue SUV to the side with the driver pointing a gun at them? Pardon me. The trial court allowed that in through a continuing narrative, on a continuing narrative basis. Is that right? That's true. Why was that incorrect? So I think there are a couple problems with that. First of all, the way the court allowed it in, it didn't seem to be applying an exception. It didn't seem to believe it was other crimes evidence. It just seemed to let it in in the case in chief. And so no limiting instruction was given for that evidence to the jury, at least in advance. So there was no reason for them to connect that evidence with limiting instruction. But also counsel asked the court to weigh the prejudicial and probative value of that testimony. The court explicitly did not do so and implicitly did not seem to do so. And there was no limiting of the scope of that testimony. So there is some prejudice from that, even if it's a smaller amount of prejudice than the rest of this testimony that I think had more prejudicial value. But in the harmless error analysis, I think this testimony could also play a role. The problem there is that Jasmine and Arakaya, the two women in this car, they aren't able to identify Mr. Whittle as the man in the SUV. And Your Honor, in asking the question, noted that it immediately preceded the stop. There's actually no testimony in the record that I'm aware of that gives a good timeline of how much time elapses from that earlier time to the later stop. And in the interim period, the police testified that this SUV sits empty, parked on the street for some period of time. So from that initial encounter where we have an unknown black man pointing an unknown gun, the gun is not described, so we can't match it to either of the guns that have been charged here, the SUV sits empty for some period of time. So it could have been Mr. Whittle in that SUV, but it could have been someone else. Even though it was the same SUV driven later, it was parked empty on the street for some period of time. Does it necessarily need to be considered other crimes evidence here? Could it be argued that it is simply relevant evidence to establish why the police did what they did in terms of their investigation, attempting to pull over the blue SUV at a later point? Well, I think that is the heart of the exception, to allow in that type of evidence, even if it is other crimes evidence. I think just based on the definition of other crimes evidence that this would qualify, since it is evidence of another offense that was not charged in this case, unlawful use of a weapon, pointing a gun at another person could be charged as a crime. And it was not in this case, so I think it meets that basic definition. It may also meet the exception for allowing in the continuing narrative. I've noted in the briefs that there is an argument that it should qualify for that exception. Our argument has been that it was not properly handled by the trial court, and that they did not weigh the prejudicial and probative value, and there was no limiting instruction. So it may well have come in that way regardless, but it wasn't properly dealt with in that analysis. I think more broadly in the harmless error analysis, that piece of evidence doesn't save this case, was the point I was trying to make. If this court finds that there are a number of pieces of other crimes evidence that should have been more limited, or should not have come in at all, it should find that these errors were not harmless beyond a reasonable doubt. Because the only other evidence that goes to Mr. Whittle's alleged possession of these guns, beyond other crimes evidence, is the testimony of Gabrielle Simonow. And this goes back to the discussion Your Honor and I had at the beginning of this argument. The jury did not believe, apparently believe, Ms. Simonow in that they acquitted Mr. Whittle of possession of the .357 revolver. If they had believed her, they should have convicted him of both crimes, and they did not do so. Simonow had some serious credibility issues herself. She changed her story repeatedly, from initially stating that the guns belonged to her, to accusing Mr. Whittle, to back to saying the guns were hers. So there's ample reason to understand why the jury might not have fully believed her story. But this sets up almost a perfect science experiment for this court on harmless error. We have two guns, and charges built on those guns. All the other crimes evidence goes to one gun, and the charge on that gun resulted in a conviction. None of it goes to the other gun, the charge of which resulted in an acquittal. The test for whether there exists a reasonable probability that the jury would have acquitted Mr. Whittle absent those errors, that sets up a perfect test for this court on that point. And if this court finds that any of these individual errors, or together in the aggregate, were errors and should not have occurred, then it should find that these errors were not harmless beyond a reasonable doubt. And just quickly, I would note... Why is it harmless beyond a reasonable doubt? I'm sorry, that was a mistake. Just checking. I apologize. And that is a mistake that happens often in these cases, so it's... I recognize it as the default position of OSAP. Yeah, well, it doesn't hurt to have a default position. Yes, I understand. But here, it was not harmless because there was a reasonable probability that the result would have been different. For all these reasons, this court should reverse and remand for a new trial. Thank you, Mr. Kemmel. Thank you. Ms. Wyko. Thank you, Your Honor. May it please the Court, Counsel. Your Honor, the defendant has contended here that the court abused its discretion in admitting other crimes' evidence. What we have here is a case where the court carefully exercised its discretion and provided limiting instructions at the time the evidence was received as well as before the jury deliberated. The jury clearly followed those instructions when it acquitted the defendant on the .357 caliber handgun. Your Honor, the fact that the jury acquitted the defendant on that handgun demonstrates that they followed the instructions that were given to them. They knew, based on this evidence, that the defendant did indeed possess the .40 caliber Glock. But they acquitted him on the .357 handgun. If the jury truly believed the defendant was a criminal kingpin and a bad person, as suggested by the defendant, they would have convicted him on both handguns. Your Honor, once the jurors were told why they could consider this evidence, it became clear that the defendant was indeed the person who possessed the .40 caliber gun. This evidence is extremely probative on the primary question in this case of whether the defendant possessed that gun. Your Honor, there was some discussion about the testimony of Jasmine Millon and Rekia Brown. As noted properly by the defendant, this is considered the continuing narrative of this case. As this court has suggested, Justice Steigman indeed, and People v. Johnson, the jurors need to know the background of this story. Otherwise, the events that have occurred are otherwise inexplicable. That's exactly what we have here. Absent the testimony of Jasmine Millon and Rekia Brown, we would have been in a position where the jurors are now confronted with this fling and eluding scene for apparently no reason whatsoever. What happened here, the girls pulled up to an intersection, the vehicle pulled up next to them, and they saw the driver of that vehicle point a gun at them. They turned away from the intersection, went to a gas station, and called the police. That's how this whole chain of events began. They gave the police officers a license plate number, the police then found that vehicle, and they then followed the vehicle, during which time it fled, as we see on the DVD of the police chase in this case. And then the defendant was arrested as the driver of that vehicle. This is all continuing narrative in this case, and without the testimony of these girls, the events that unfolded would be otherwise inexplicable. Your Honors, next there was significant discussion about the testimony of William Rivera. Here, the court exercised its discretion when it introduced the testimony of Rivera. Initially, we had a motion in limine hearing where the state itself, Mr. Rivera did not testify at the motion in limine hearing, the state proffered to the court what Rivera would testify to. The court said, okay, I'm going to accept this, Rivera can testify, but before he testifies in front of the jury, I want to hear him, outside the presence of the jury, another proffer as to what he's going to say. And that's what then happened at the trial. The trial court had the jurors leave, Rivera then took the witness stand, and the court and the attorneys questioned Rivera as to what his testimony would be that day, so that the court was sure that he was going to testify such as the state had suggested he would during the motion in limine hearing. The court here carefully exercised its discretion when it came to the testimony of Rivera. There were two proffers which the court ensured were going to be consistent with what Rivera then testified to in front of the jury. Furthermore, the court provided a limiting instruction before Rivera testified that the jury could only consider his testimony as it related to defendant's knowledge of the handgun, and then another limiting instruction at the time of jury deliberation. Your Honors, furthermore, the defendant has taken issue with the testimony of Detective Causer. There's been some discussion as to how his testimony was in any way different from what Aaliyah Lobano would have testified to. She was David Rivera's girlfriend at the time. Detective Causer's testimony differed from hers in two important ways. First of all, Detective Causer is a player in this chain of events that took place. He interviewed the defendant right after he was arrested from the vehicle after this police chase. Detective Causer isn't just some random passerby that the state brought in. He's an integral part of this whole investigation, and that's why his testimony was admissible. Furthermore, Your Honors, the state may present evidence to prove its case beyond a reasonable doubt. That's the whole point of what's happening here. As the defendant has suggested both in his brief and in his arguments today, there were credibility issues with Rivera, but the jury was aware of all of those credibility issues. The jury wasn't left in the dark as to whether he had any credibility issues. There was testimony that his story had changed, that he did have a criminal history, and the jury was aware of that, and they were in the best position to judge his credibility. Your Honors, the court here carefully exercised its discretion, particularly as it related to David Rivera. They provided all of the proper limiting instructions in this case, both at the time the evidence was presented as well as before the jury deliberated. The jury clearly followed those instructions as is demonstrated by the fact that they acquitted the defendant on the .357 caliber handgun. That demonstrates that they followed those instructions, and based on the evidence, they believe that the defendant only possessed the .40 caliber Glock. If the jurors really believed that the defendant was a criminal kingpin and a bad person, they would have convicted him on both guns, and they didn't do that in this case. Once they were told why they could consider the other crime's evidence, as it related to the defendant's knowledge of the weapon, they followed those instructions to decide the primary question in this case of whether the defendant possessed that handgun. They found that he did possess the .40 caliber Glock, and the court did not abuse its discretion in admitting the evidence in this case. Unless Your Honors have any questions? I do have a question in regards to the jail phone calls that Mr. Kimmel didn't get to. There are a lot of issues, and I understand that. But in terms of the jail phone calls, there were two of them. The second one, I read through the transcript of that call two or three times, and I have to say, even after reading it two or three times, I still didn't understand what the import of it was. I didn't understand what was being said. Was there a discussion with the court prior to it being admitted as to what it meant? Did the court indicate what it understood it to mean? Your Honor, the court did not give any kind of indication on the record that I recall of exactly what it thought that these phone calls meant. The phone calls, particularly the second one, was admissible to show that the defendant had throughout this maintained that he didn't know Rivera, that he had nothing to do with this. That phone call is important to suggest that, yeah, you did know him. You have a relationship with this person. In the phone calls, as is evidenced from the transcript that you just talked about, the defendant is talking about a man, quote, from out of town talking about something that was stolen. You've got to holler at him. I don't even want him hollering at dude. The state suggested that dude was Rivera. And, Your Honors, I think what's important, and as Your Honor just said, you read through the transcript a few times, as Justice Steigman has noted just recently, I believe last month in People v. Haddon, the paralanguage in these cases is so important of how things are said, the listening effect that it has upon the jury, that we shouldn't go back on the jury's decision in this kind of a situation where they're the ones who are listening, where they're the ones who are considering how things are said, the inflection in how things are said. There's such a different perspective when you read something on paper versus when you actually listen to the things that were said and how they were said. The defense counsel objected that it was unintelligible. In order for evidence to be admissible, it needs to be intelligible. Was there an objection made that this wasn't admissible because it's unintelligible? Your Honor, there was not an objection made on that specific point as to the unintelligible aspect of it that I can recall. Your Honors, what the state argued was that these are admissible. The first phone call, because he talks about Gabrielle Simino, that suggested that her testimony was indeed true, that she was truthful to the jury when she said that he passed back these weapons and that she sort of took the fall for him initially before coming forward with the truth. And in terms of the second phone call, that was admissible to show that the defendant did indeed know Rivera, although he doesn't explicitly state him by name, as Your Honors have seen, and the defendant has suggested these people call each other by nicknames. They're not always using someone's full name. Your Honors, it's important to consider the listening effect of those phone calls on the jurors as opposed to just what we have on cold paper and transcripts. Your Honors, those phone calls were important because they suggested that Simino was being truthful, that she was a credible witness. Again, with Simino we had a similar situation to what we had with David Rivera where there were credibility issues, stories had changed over time, and the jurors knew that. They weren't left in the dark about the credibility issues that these witnesses had. They knew that stories had changed. In fact, there was a little bit of testimony about Gabrielle Simino even going to defense counsel to say that she is indeed the one that had something to do with this. The jury knew all of these things. They considered how everyone testified, they considered the multiple stories, and they found the defendant guilty of the .40 caliber handgun. Your Honors, here the court exercised its discretion and provided all of the proper limiting instructions, and the defendant was not prejudiced by the other crimes evidence that was entered in this case as is evidenced by their split verdict when they acquitted the defendant on the .357 caliber handgun. If Your Honors have any other questions? I don't see anything. The State asks that you affirm. Thank you. Mr. Kelly? May it please the Court? I'd like to talk a little bit about the jail phone calls that Your Honor asked about, and then also about Detective Causer's testimony. The two have some relationships with one another. So the two jail phone calls, the first call, the State argued and the prosecution argued and the Court admitted that for the purpose of showing Mr. Whittle's state of mind. I think the idea was that there was some kind of admission there of guilt in comparing the two bond amounts of Gabrielle Simono and himself. I don't think that's actually reflected in the phone call, because as Your Honor noted, it's somewhat hard to understand. And Mr. Whittle does not go so far as to say anything that's an admission of guilt. He simply says that, I think she might have told. He says that twice. One ends with a period and one ends in a transcript with the word unintelligible in brackets. And having listened to the call, the audio, I also thought it was unintelligible. Is Wyckoff's point a good one, though, about how what might appear to be gibberish in a transcript might contain meaningful information to a jury listening to it for pauses and inflection and tone and all the rest? I don't see how that bears on this case, Your Honor, in a meaningful way. The concept in general I agree with, but here in particular I agree with Justice Harris's point that it's hard to find what in these calls has any bearing on this case. And so that was the first call. So if it has no problem of value, what's its prejudicial effect? Gabrielle Simono testified that she was being threatened by Mr. Whittle's associates. That's problematic in and of itself, that testimony. But these calls seem to go to this kind of ambiguous assertion of witness tampering, that he's talking to people on the outside about these people, and then Ms. Simono is testifying that she's being threatened by his associates. You could link these things up if you wanted to, and that ambiguity could point in that direction. I don't think there's enough in these calls in probative value to show that, but it's prejudicial because of that potential connection. The second call that apparently discusses Mr. Rivera, as the State notes, no one is named there, that doesn't go so far as the State seems to believe. Mr. Whittle just relates the contents of his conversation with the detective to another person on the phone. He's not saying that he knows this person. He just says, the police asked me about somebody from out of town that's talking about something that was stolen. He's just relating the contents of that conversation. Mr. Whittle's credibility is not an issue in this trial because he didn't testify. So calling him a liar and comparing his testimony, I'm sorry, comparing... The wipe-off argues that the tape suggests an acquaintanceship with Rivera. I don't believe that the call does suggest that. He's saying what the police were talking about and what he told the police to do, which was... The tone, inflection, pauses, and all the rest have drawn the inference that perhaps he was talking about Rivera? I think it is within the realm of possibility, but I don't think based on this transcript and that call it was likely, and the judge has to make the initial first determination on that. Well, the transcript, though, is only half the story of that, given the obvious gibberish with which your client speaks. We're talking about what else was communicated besides the written word. That is something that may bear on some cases, Your Honor, but I don't think it bears on this case because there was so little probative value. Even if that accounts for some probative value, that shouldn't have been enough to outweigh the substantial prejudicial value here. It would be probative, though, if it indicated a link from the defendant's own mouth to Rivera. It could, Your Honor, but I don't think there's any showing of that in this phone call, and I think the possibility that someone could find that between the lines of text that is present to read that in should not be enough to allow in this prejudicial evidence. I would note that that links to Detective Causer's testimony in the State's argument only, in that Detective Causer talked about these same issues, and the State says that his testimony should come in because he's a player in the chain of events here. That's not enough to allow in other crimes' evidence. He has to have some relevant thing to say, and the State is able to prove its case however it wants, but that has to happen within the bounds of the rules of evidence. There are limits on how they can prove their case. For all these reasons, this Court should reverse and remand for a new trial. Thank you. Thank you, Counsel Boag. The case will be taken under advisement and a written decision challenged.